# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4263 | **DATE** | 12/5/2002 |
| **CASE TITLE** | Anna L. Weiler, et al. vs. Gregory J. Lapkoff, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 1/23/2003 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion for judgment on the pleadings is denied. Leave of court is given to the plaintiff to file an amended complaint. Response to the amended complaint due January 10, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 0 6 2002 date docketed | 9 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | SLB | courtroom deputy's initials | 02 DEC -5 PM 1:59 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| ANNA L. WEILER, MARTIN PLESH, and<br>BARBARA M. STASICA, as Trustees of the<br>Diamond Machine Werks, Inc. 401(k) Savings Plan;<br><br>Plaintiffs,<br><br>v.<br><br>GREGORY J. LAPKOFF, GEHARD H. WEILER,<br>and CAROL J. ZOLP, as Trustees of the Weiler<br>Engineering, Inc. Employee 401(k) Savings Plan;<br>JOHN DOE, Plan Administrator of the Weiler<br>Engineering, Inc. Employee 401(k) Savings Plan;<br>and THE WEILER ENGINEERING, INC.<br>EMPLOYEE 401(K) SAVINGS PLAN;<br><br>Defendants. | PROCEEDED<br>DEC 0 6 2002<br><br>No. 02 C 4263<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, in their capacity as Trustees of the Diamond Machine Werks, Inc. 401(k) Savings Plan" ("Diamond Plan"), filed suit against Defendants for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). Presently before the Court is Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b). *Fallimento C.Op. M.A. v. Fisher Crane Co.*, 995 F.2d 789.791 (7th Cir. 1993). The court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The court should grant the motion only if it appears beyond a doubt



that the plaintiff cannot prove any set of facts that would support the allegations in the complaint and the plaintiff's claim for relief. *Fallimento C.Op. M.A.*, 995 F.2d at 791.

A reading of the complaint supports the following summary of the alleged conduct of the parties.

Weiler Engineering, Inc. ("Weiler"), an Illinois corporation, established the Weiler Engineering, Inc. Employee 401(k) Savings Plan ("Weiler Plan"), a 401(k) savings plan partially funded by Weiler employee contributions. Weiler was the corporate parent and sole shareholder of Diamond Machine Werks, Inc. ("Diamond") through December 31, 2000. Approximately seventy-five employees were responsible for performing work at Diamond. These employees were on the Weiler payroll and made contributions to the Weiler Plan while they performed work for Diamond. Defendants, Gregory Lapkoff, Gerhard H. Weiler, and Carol J. Zolp, are presently trustees of the Weiler Plan.

On January 1, 2001, Diamond was split-off from Weiler. The split-off took place pursuant to a "Split-Off Agreement". The Split-Off Agreement provided that a portion of the assets of the Weiler Plan, representing the account balances of the Diamond employees, would be transferred to a new Diamond Plan, and all other Weiler assets which were an integral part of and/or associated with the Diamond operations would be transferred to Diamond. Plaintiffs, Anna L. Weiler, Martin Plesh, and Barbara M. Stasica, are presently trustees of the Diamond Plan. In connection with the split-off, the employment of certain Weiler employees were transferred from Weiler to Diamond, and such employees became Diamond employees. Diamond also established the Diamond Plan in connection with the split-off.

At all relevant times, the assets of the Weiler Plan, including the account balances of the Diamond employees, were invested through a group annuity contract ("Weiler Contract") issued by the Principal Financial Group ("Principal"). In connection with the split-off, the Weiler Plan transferred $5,288,505.80 from the Weiler Contract to a spin-off group annuity contract, the Diamond Contract, also issued by Principal. The Diamond Contract was the funding vehicle for the Diamond Plan and represented that portion of the assets of the Weiler Plan representing the account balances of the Diamond employees, determined as of the date of the transfer.

On March 31, 2001, the Principal board of directors voted to convert, or "demutualize", from a mutual insurance company to a stock company. The "Record Date" of the demutualization was March 31, 2000; and the "Effective Date" of the demutualization was October 26, 2001.

Principal contract holders who owned Principal group annuity contracts on March 31, 2000, and maintained ownership through October 26, 2001, received compensation based on the contract's historical contribution to Principal's surplus (" the Demutualization Compensation"). The amount of the Demutualization Compensation distributed to each contract holder was determined based on the value of assets under the contract on the Record Date. Thus, a portion of such Demutualization Compensation payable under the Weiler Contract was attributable to the contributions and account balances of Diamond employees.

On the Record Date, the value of assets under the Weiler Contract was approximately $13,693,992.53, which amount included approximately $5,288,505.80, representing the value of the account balances of the Diamond employees that was subsequently transferred from the Weiler Plan and Weiler Contract to the Diamond Plan and Diamond Contract. In other words, approximately 38.62% of the value of the Weiler Plan assets held in the Weiler Contract at the Record Date was

3

attributable to contributions and accounts of Diamond Employees. As such, approximately 38.62% of the Demutualization Compensation, or $218,592.09, was attributable to account balances of the Diamond employees.

Once the board of Principal approved the plan for demutualization providing for the payment of Demutualization Compensation, the Demutaulization Compensation represented earnings or income on the assets of the Weiler Plan. The Weiler Plan and/or the Weiler Contract provided that all income and earnings on plan assets to be allocated proportionately to the accounts of all participants, in proportion to their account balances. However, no amount of Demutualization Compensation received by the Weiler Plan was ever transferred to the Diamond Plan or Diamond Contract for allocation to the accounts of the Diamond employees, even though the value of their accounts under the Weiler Plan and Weiler Contract on the Record Date contributed to the amount of Demutualization Compensation received by the Weiler Plan.

By letters dated December 14, 2001 and March 1, 2002, the Plaintiffs requested that the Weiler trustees direct a transfer of the amounts of Demutualization Compensation attributable to the account balances of the Diamond Employees to the Diamond Plan in an amount not less than $4,218,592.09. To date, Defendants have failed to transfer any assets to the Diamond Plan for allocation to the accounts of Diamond employees with respect to the amount of Demutualization Compensation.

Plaintiffs allege that the above conduct constitutes violations of ERISA, specifically, breach of fiduciary duty (Count I), statutory violation of ERISA (Count II), and prohibited transaction in violation of ERISA (Count III).

Defendants contend that the Plaintiffs, as fiduciaries of the Diamond Plan, do not have standing to bring the instant suit against the trustees of the Weiler Plan; as fiduciaries of the Diamond Plan, Plaintiffs could only bring suit to enforce the Diamond Plan. The Plaintiffs contend that they have standing pursuant to 29 U.S.C. § 1132(a).

Section 1132(a) expressly authorizes suits to enforce ERISA's provisions to be brought by fiduciaries as well as participants, beneficiaries, and the Secretary of Labor. *See* 29 U.S.C. § 1132(a). The ERISA "statute does not contain any express limitation on suing fiduciaries of other plans, and applying such a limitation ... could hardly further Congress' intent to impose strict fiduciary duties on administrators of ERISA plans. *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1398 (9th Cir. 1995) (*Pilkington*).

Fiduciaries of one ERISA plan have been found to have standing to bring suit against fiduciaries of a different ERISA plan. In *Winstead v. J.C. Penny Co.*, 933 F.2d 576 (7th Cir. 1991) (*Winstead*), the Seventh Circuit held that the trustees of one ERISA plan had standing to bring suit against fiduciaries of another, unrelated plan for a declaration that the second plan had the primary coverage and was required to pay a medical claim. *Winstead*, 933 F.2d at 579. The court found that the trustees were fiduciaries that were suing, in one sense, to enforce the unrelated plan but also to enforce their own plan because "[t]o enforce is to effectuate". *Winstead*, 933 F.2d at 579.

In *Pilkington*, the Court held that the fiduciaries of a successor plan could bring suit against the predecessor fiduciaries. *Pilkington*, 72 F.3d at 1402. The court found that the fiduciaries of the successor plan had inherited any injuries that had been sustained by the predecessor plan's post-spin-off plan. *Pilkington*, 72 F.3d at 1399. In light of the defendant's alleged breach of duty that

caused injury to plaintiff's ERISA plan, the successor plan fiduciaries had standing to bring suit against the predecessor ERISA. *Pilkington*, 72 F.3d at 1399.

The *Pilkington* court relied, in part, upon the "sound reasoning of" *Modern Woodcrafts, Inc. v. Hawley*, 534 F. Supp. 1000, 1014 (D. Conn. 1982) (*Modern Woodcrafts*), which held that:

> in order to have standing to sue under ERISA as a 'fiduciary,' ... a party must be (or have been) not merely a fiduciary of any ERISA plan, but rather, a fiduciary of the particular plan victimized by the alleged breach or victimized by the alleged breach of fiduciary duty.

As to the standing issue, the *Modern Woodcrafts* holding is consistent with the requirement that the plaintiff be a fiduciary pursuant to 29 U.S.C. § 1132(a), and that a plaintiff allege that he has sustained a personal injury in fact that is fairly traceable to the defendant's alleged unlawful conduct and likely to be redressed by the relief requested, *see Johnson v. Allsteel, Inc.*, 259 F.3d 885, 887 (7th Cir. 2001).

As in *Winstead* and *Pilkington*, the present Plaintiffs are fiduciaries of an ERISA plan that have filed suit against the trustees of a separate ERISA plan (in addition to the plan itself) because of an alleged breach of fiduciary duty by the trustees of the separate ERISA plan that caused injury to the Plaintiffs' plan. Accordingly, the present Plaintiffs have standing to bring the instant suit. *See Pilkington*, 72 F.3d at 1399-1401; *Winstead*, 933 F.2d at 579; *Modern Woodcrafts*, 534 F. Supp. at 1014.

Furthermore, the Plaintiffs have also alleged, in paragraph 43 of their Complaint, that they were Weiler Plan participants on the Record Date. As such, Plaintiffs would have standing to bring the instant suit. While this pleading is inconsistent with Plaintiffs' caption and the introductory paragraph in which they state that they bring suit "not in their individual capacity but solely in their

capacity as trustees of the Diamond ... Plan"; in light of the above standard for granting the instant motion, paragraph 43 can be interpreted as an alternate pleading.

Lastly, contrary to Defendants' argument, Plaintiffs need not have exhausted their administrative remedies to bring suit as plan participants because they have alleged a breach of fiduciary duty, and the other two claims involve intertwined issues. *See Bartz v. Carter*, 709 F. Supp. 827, 829 (N.D. Ill. 1989); *Joncek v. Local 714 Inter'n of Teamsters Health & Welfare Fund*, 1999 WL 755051 (N.D. Ill. Sept. 3, 1999); *Korchek v. Nichols-Homeshield*, 1997 WL 619869 (N.D. Ill. Sept. 30, 1997).

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is denied.

Dated: December 5, 2002

JOHN W. DARRAH
United States District Judge